UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULETTE A. WILLIAMS,

    *Plaintiff*,

  v.

MEGAN J. BRENNAN, Postmaster General, *et al.*,

    *Defendants*.

Civil Action No. 17-1285 (RDM)

**MEMORANDUM OPINION**

Plaintiff Paulette Williams, proceeding *pro se*, brought this action against sixteen defendants alleging a host of claims relating to her tenure as an employee of the United States Postal Service. In a previous memorandum opinion and order, the Court dismissed almost all of Williams's claims but left intact her Rehabilitation Act claims against Meghan Brennan, in her official capacity as Postmaster General of the United States. *See Williams v. Brennan*, 285 F. Supp. 3d 1, 6 (D.D.C. 2017) ("*Williams I*"). The Postal Service has now moved to dismiss or, in the alternative, for summary judgment. Dkt. 41. Because Williams has failed to exhaust her administrative remedies, the Court will **GRANT** the Postal Service's motion to dismiss.

## I. BACKGROUND

**A.    Williams's Remaining Claims**

Paulette Williams, an employee of the Postal Service, filed this action in June 2017. Dkt. 1. The Court dismissed her initial complaint for failure to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a). Dkt. 4. Williams then moved for reconsideration and to reopen the case, and, at the same time, she filed an amended complaint.

1

Dkt. 6; Dkt. 7.  After the Court granted her motion and reopened the case, Dkt. 9, fifteen of the defendants moved to dismiss on various grounds, Dkt. 21; Dkt. 29.  There is no evidence that the remaining defendant was ever served.  *Williams I*, 285 F. Supp. 3d at 4 n.3.  The Court granted one of those motions and *sua sponte* dismissed the remaining claims, with the exception of Williams's Rehabilitation Act claims against the Postal Service.  *Id.* at 1−9.  Although not a picture of clarity, those claims appear to have four components:

First, Williams alleges that Tony Johnson, the Postmaster for Fort Belvoir, Virginia, denied her November 2015 request that the Post Office accommodate her physical disability.  Dkt. 7 at 2 (Am. Compl. ¶ 1).  Then, when Williams was ready to return to work, Johnson denied her request to do so, even though her doctor had "lift[ed] all restrictions" on her ability to work.  *Id.* (Am. Compl. ¶ 2).  And, when Williams had returned to work about two months later, Johnson "creat[ed] a hostile work environment" by making "crude remarks . . . pertaining to [her] disability" and her "homelessness."  *Id.* (Am. Compl. ¶ 3).

Second, Williams avers that Preston Phillips, the manager of the Diamond Farms Post Office in Gaithersburg, Maryland, retaliated against her in February 2016 due to her "pending grievance" pertaining to the events occurring at the Fort Belvoir Post Office.  *Id.* at 3 (Am. Compl. ¶ 4).  Over a year later, according to Williams, Phillips denied her April 2017 request that the Post Office accommodate her "mental health issues."  *Id.* (Am. Compl. ¶ 5).

Third, Williams alleges that in June 2017, Patrice Shaw, the Officer in Charge of the Gaithersburg, Maryland Post Office, threatened to "expos[e] her . . . personal business"—which the Court understands to refer to her disabilities—unless she met with Shaw "without a steward present."  *Id.* (Am. Compl. ¶ 6).  According to the amended complaint, Shaw again "victimized" and "harass[ed]" Williams in July 2017, "when [Shaw] had the floor supervisor . . . serve

[Williams] with a memo[] stating that [Williams's] job would be . . . abolished." *Id.* (Am. Compl. ¶ 8).

Fourth, Williams avers that from February 2017 to the present, the Postal Service has denied her requests to transfer to other positions and her requests for promotion in retaliation for her "intent to bring civil litigation" against the Postal Service, *id.* (Am. Compl. ¶ 7), and, finally, laid her off on July 3, 2017, "due to [her] disability," *id.* (Am. Compl. ¶ 9). Although Williams was told that this layoff was "expected to last" only two weeks, by the time she filed her amended complaint almost a month later, she had not yet been reinstated. *Id*. (Am. Compl. ¶ 9).

**B.    Administrative Proceedings**

On December 3, 2015, Williams filed an administrative Equal Employment Opportunity ("EEO") complaint with the Postal Service. *See* Dkt. 1-4 at 4. Although the parties have not provided the Court with a copy of that administrative complaint, the Court assumes for present purposes that it challenged the Postal Service's November 30, 2015 decision declining to accommodate Williams's physical disability. Indeed, that is the only conduct that Williams now challenges that *preceded* the December 3, 2015 administrative complaint, Dkt. 7 at 2, and a later administrative notice confirms that Williams, in fact, filed an administrative complaint challenging the November 30, 2015 decision, Dkt. 41-7 at 4.

A week after filing that administrative complaint, Williams's union, the American Postal Workers' Union ("APWU"), filed a grievance on her behalf that raised the same substantive complaint, although in the context of a labor-management dispute. Dkt. 41-3. That grievance, filed on December 10, 2015, alleged that Williams "was denied" the opportunity to work "after requesting reasonable accommodations due to her work limitations and permanent medical

3

condition," and, in particular, that Johnson informed her that "she would no longer be scheduled to work due to her work restrictions." *Id.* at 1.

On February 4, 2016, Williams withdrew her EEO complaint, prior to issuance of a decision by the EEO Office and prior to expiration of the 180-day period of time for the EEO Office to act on the complaint. In a letter to the Postmaster General attached to Williams's initial complaint in this matter, she explains that she withdrew her EEO complaint "because Dana Claybrooks," the Postal Service's EEO counselor, "convinced" her that her union grievance process "would help [her] the same way, if not better, than what [Claybrooks] could, considering [Williams's union grievance] was already up for arbitration."[1] Dkt. 1-2 at 4.

Over ten months later, on April 20, 2017, the union and the Postal Service reached a settlement of Williams's grievance. Dkt. 41-4 at 2. Williams was awarded a cash payment to cover her lost wages for her "denial of light duty [work] from December 15, 2015 until she returned to work on February 1, 2016." *Id.* Although this award covers a period of time after she filed her administrative complaint (on December 3, 2015) and after the union initiated the grievance process (on December 10, 2015), it appears that the Postal Service's decision to restrict her ability to work during that period of time was directly related to Williams's earlier request for an accommodation.

Unhappy with the resolution of her union grievance, Williams took a step toward re-initiating the EEO process on May 15, 2017, by submitting Postal Service Form 2564-A. Dkt.

---

[1] Because Williams is proceeding *pro se*, the Court has reviewed her various submissions, including attachments, for evidence or information that might support her claim. *See Crawford v. Duke*, 867 F.3d 103, 108 (D.C. Cir. 2017) ("We generally 'permit[ ] courts to consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged' in her complaint.") (quoting *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (collecting cases)).

4

41-5. That form, captioned "Information for Pre-Complaint Counseling," is not an EEO complaint but, instead, merely initiates the counseling process. *Id.* at 1. The issues that Williams raised, moreover, are only indirectly related to the claims she asserts in this case. Rather than challenge the Postal Service's failure to accommodate her disabilities, she challenged the union grievance process, asserting that "[t]he union rep did not at all attempt to represent [her] correctly." *Id.* Consistent with that claim, she named the APWU Vice President for Labor Relations as the "official[] who took the action which prompted" Williams "to seek counseling," and she listed the date the grievance was settled as the date "the incident or action that prompted" her need for counseling took place. *Id.* at 1−2. There is no evidence that, prior to filing this lawsuit, Williams ever filed an administrative complaint relating to the allegations raised in her request for counseling.

Ultimately, with the exception of the complaint that she filed and withdrew, Williams did not file an administrative EEO complaint until August 9, 2017—several weeks after she filed this lawsuit. *See* Dkt. 41-7. As reasonably construed by the Postal Service's EEO Office, that administrative complaint raised ten issues, including the November 30, 2015 decision not to accommodate Williams's disability; alleged "harassment regarding" her "shoes, pants, and mobile devices;" and a variety of events occurring in 2017. *Id.* at 1−2. In September 2017, the EEO Office accepted some of those claims for investigation but declined to accept three of Williams's claims. *Id.* at 3. Most significantly for present purposes, it declined to accept her claim regarding the November 30, 2015 failure to accommodate on the ground that Williams had raised that claim in a prior complaint and had voluntarily withdrawn that complaint. *Id.* at 4.

5

## II. ANALYSIS

The Postal Service moves to dismiss or, in the alternative, for summary judgment on three grounds: (1) Williams has failed to exhaust her administrative remedies in a timely manner; (2) her 2015 failure-to-accommodate claims are barred by the settlement of her grievance; and (3) several of her other claims fail as a matter of law. Dkt. 41-1. In addition to these defenses, the Court must, on its own, consider whether it has subject-matter jurisdiction. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Because that inquiry must come first, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998), and, in the present context, overlaps with the Postal Service's exhaustion defense, the Court begins—and ends—with exhaustion.

Like many other discrimination statutes, "[t]he Rehabilitation Act requires individuals to exhaust administrative remedies before they can file suit to enforce the Act's protections." *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015). In some circumstances, the requirement is jurisdictional and thus may not be excused based on futility or equitable considerations. *See Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006). But, in other circumstances, it is non-jurisdictional, *Doak*, 798 F.3d at 1103–05, and thus "subject to waiver, estoppel, and equitable tolling," *Saltz v. Lehman*, 672 F.2d 207, 208 (D.C. Cir. 1982). To the extent the requirement is jurisdictional, the plaintiff bears the burden of alleging facts sufficient to establish that he or she exhausted administrative remedies and bears the ultimate burden of proof. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006); *Georgiades v. Martin-Trigona*, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984). In contrast, to the extent it is non-jurisdictional, the failure to exhaust constitutes an affirmative defense, and thus the defendant must raise the defense and bears the burden of proof. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

Two D.C. Circuit precedents mark the bounds of jurisdictional and non-jurisdictional exhaustion under the Rehabilitation Act. In the first, *Spinelli v. Goss*, the D.C. Circuit held on interlocutory appeal that the district court should have dismissed the plaintiff's "Rehabilitation Act claim for lack of jurisdiction on the ground that he failed to exhaust his administrative remedies." 446 F.3d at 162. Applying *Spinelli*, a number of district court decisions held, in categorical terms, that administrative exhaustion under the Rehabilitation Act is a jurisdictional requirement. *See, e.g.*, *Dick v. Holder*, 80 F. Supp. 3d 103, 110 & n.8 (D.D.C. 2015); *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 58 (D.D.C. 2011). In *Doak v. Johnson*, however, the D.C. Circuit held that "*Spinelli* does not reach that far." 798 F.3d at 1103. In *Doak*, unlike in *Spinelli*, the plaintiff had filed an administrative claim; her misstep was that she had failed to initiate the EEO counseling process within 45 days, as required by the Equal Employment Opportunity Commission regulations. *Id.* at 1103 (plaintiff waited 78 days to contact EEO counselor). Although the district court concluded that her misstep deprived the court of jurisdiction, the Court of Appeals disagreed. *Id.* at 1103. As it explained: "In *Spinelli*, [the] court addressed the jurisdictional consequence of a plaintiff's wholesale failure to file an administrative decision at all." *Id.* Because the Rehabilitation Act provides a remedy only to employees who are "aggrieved by the final disposition of [an administrative] complaint," 29 U.S.C. § 794a(a)(1), and because the plaintiff in *Spinelli* "never filed an administrative complaint," the *Spinelli* court held that there was "never any reviewable final administrative action" and thus the district court was without jurisdiction. *Id.* at 1103–04. But, as the court emphasized in *Doak*, "[t]hat is all *Spinelli* held." *Id*. at 1104.

In drawing this line, the *Doak* decision distinguished between statutory and administrative exhaustion requirements. The statutory requirement under the Rehabilitation Act

7

appears in a single clause: the remedies available to federal government employees under Title VII, 42 U.S.C. § 2000e-16, are available under the Rehabilitation Act "to any employee . . . aggrieved by the final disposition of [an administrative EEO] complaint or by the failure [of the agency] to take final action on such complaint." 29 U.S.C. § 794a(a)(1). *Doak* made clear that *Spinelli* does not extend to "non-statutory step[s] preceding the formal agency exhaustion required by statute" that were "created by EEOC regulation." 798 F.3d at 1104. In particular, under the regulations—but not under the Act itself—an aggrieved employee must initiate the EEO counseling process within 45 days of the alleged incident. 29 C.F.R. § 1614.105(a). If the informal counseling process is unsuccessful, the employee may then file a formal grievance, which initiates the formal administrative process. 29 C.F.R. § 1614.106. The agency then has 180 days to provide the aggrieved party with a copy of the investigative file and to notify her that she has a right to request a hearing or a final agency decision. 29 C.F.R. § 1614.108(f). After 180 days have passed, regardless of whether the agency has issued a report or rendered a decision, the aggrieved party can file suit. 29 C.F.R. §§ 1614.108(g), 1614.407(b).

Against this backdrop, the Court must determine whether Williams has exhausted her administrative claims, whether any failure to exhaust is jurisdictional or non-jurisdictional, and what consequences follow. The Court will first address Williams's most recent claims and will then turn to her 2015 claims.

**A.**     **Williams's 2016 and 2017 Claims**

Williams asserts several claims relating to conduct allegedly occurring in 2016 and 2017. To start, her complaint alleges that she was harassed by Tony Johnson, the Postmaster for Fort Belvoir, Virginia from February 2016, and that, beginning that same month, Preston Phillips, the manager of the Gaithersburg, Maryland Post Office retaliated against her because of her pending

grievance. Dkt. 7 at 2–3 (Am. Compl. ¶¶ 3–5). There is no evidence that Williams ever raised either of these allegations in an administrative EEO complaint. She, obviously, could not have raised either allegation in her 2015 administrative complaint, and her 2017 administrative complaint does not refer to any events occurring in 2016. Dkt. 41-6; Dkt. 41-7. Because the filing of an administrative complaint constitutes a jurisdictional prerequisite to suit under *Spinelli*, and because Williams has not satisfied her burden of pleading—or showing—that she filed an administrative complaint raising the 2016 events, the Court concludes that it must dismiss those claims for lack of jurisdiction.

In contrast, Williams has filed an administrative complaint regarding at least some of the events alleged in her complaint occurring in 2017 and continuing "to [the] [p]resent," Dkt. 7 at 4 (Am. Compl. ¶ 9), including, most notably, her claim that since June 2017 she has been "denied reasonable accommodation," Dkt. 41-7 at 2. The problem is that Williams's administrative EEO complaint was not filed until August 9, 2017—well after she commenced this action.[2] *Compare* Dkt. 41-6 at 1, *with* Dkt. 1 (Compl.). The requirement that an aggrieved party file an

---

[2] After this Court dismissed Williams's initial complaint without prejudice on July 17, 2017, *see* Dkt. 5, Williams filed an amended complaint and asked the Court to reopen her case, *see* Dkt. 6–7. The Court did so on August 18, 2017, *see* Dkt. 9, which was several days *after* Williams filed her official EEO complaint. The timing of her amended complaint does not change the Court's analysis, however. First, "the jurisdiction of the Court depends upon the state of things at the time of the action brought." *Mollan v. Torrance*, 22 U.S. 537, 539 (1824). Williams brought this action on June 29, 2017, *see* Dkt. 1, and, if a party has "filed before the exhaustion requirement . . . was satisfied," then "th[e] jurisdictional defect cannot be cured by the filing of a[] [later] amended complaint." *Edwards v. District of Columbia*, 616 F. Supp. 2d 112, 117 (D.D.C. 2009). Second, even if the Court were to treat the operative date of this action as August 18, 2017, the date on which Williams filed her amended complaint, Williams still would not have exhausted her administrative remedies; she did not provide the agency with an opportunity to investigate or default on her claims, and, therefore, there was no "final disposition" or "failure to take final action" by the Postal Service prior to the time she filed her amended complaint. 29 U.S.C. § 794a(a)(1); *see also Doak*, 798 F.3d at 1103.

9

administrative EEO complaint is, as discussed above, jurisdictional, and a plaintiff may not cure a misstep of this nature by filing an administrative complaint after bringing suit. To the contrary, "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). "The fact that remedies are exhausted after the filing of the complaint does not cure the jurisdictional defect of premature filing." *Adeogba v. Migliaccio*, 266 F. Supp. 2d 142, 146 (D.D.C. 2003) (exhaustion under the FTCA); *see also Slate v. District of Columbia*, 79 F. Supp. 3d 225, 233 (D.D.C. 2015) ("A plaintiff's failure to exhaust [under the FTCA] cannot be remedied by amending a premature complaint at a later date, after the requirements have been satisfied.")

That conclusion is supported by both the text and purpose of the Rehabilitation Act. As a textual matter, the language that the D.C. Circuit relied upon in *Spinelli*, as further explicated in *Doak*, turns on whether the employee has been "aggrieved by the final disposition of [her administrative EEO] complaint." 29 U.S.C. § 794a(a)(1). The requirement is, understandably, framed in the past tense and, under the reasoning of *Spinelli* and *Doak*, confers jurisdiction on the district court only after the plaintiff has been aggrieved by the agency's disposition of her complaint. That conclusion is also consistent with the purpose of the exhaustion requirement, which exists "in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). As the D.C. Circuit has emphasized, "claims against a federal agency—such as [] Rehabilitation Act claims . . . —must initially be brought before the employing agency itself." *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 34 (D.C. Cir. 2014). This requirement is "part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and

promoting personnel 'primary responsibility' for maintaining non-discrimination in employment." *Kizas v. Webster*, 707 F.2d 524, 543–44 (D.C. Cir. 1983).

The Court, accordingly, concludes that it must also dismiss Williams's 2017 (and post-2017 claims) for lack of jurisdiction.

**B.     Williams's 2015 Claims**

This, then, leaves only Williams's allegations involving conduct occurring in 2015. Williams asserts that the Postal Service discriminated against her based on her disability twice during this period:  First, on November 30, 2015, the Postal Service allegedly denied her request for a reasonable accommodation of her "physical disability."  Dkt. 7 at 2 (Am. Compl. ¶ 1). Second, on December 15, 2015, the Postal Service did not allow her to return to work even after she had her "physician . . . lift all [work] restrictions" that she had previously "requested during [an earlier] reasonable accommodation process."  *Id*. (Am. Compl. ¶ 2).  The Court will consider each of these allegations in turn.

1.     *November 30, 2015 Failure to Accommodate Williams's Disability*

Williams's allegations relating to the Postal Service's alleged failure to accommodate her physical disability in November 2015 stands in a different posture from her other claims because she did file an EEO complaint on December 3, 2015, which raised this issue.  *See* Dkt. 1-4 at 4; *see also* Dkt. 41-7 at 3–4 (Aug. 2017 EEO Notice of Partial Acceptance/Partial Dismissal, describing the allegations regarding November 30, 2015 as "identical to the claims raised in [her] previous EEO Complaint").  The problem is that Williams withdrew that complaint on February 4, 2016, Dkt. 41-7 at 4, less than 180 days after it was filed and before the EEO Office took any action on it.  According to Williams, she did so because Dana Claybrooks, the Postal Service's EEO counselor, "convinced [her] that APWU would help [her] the same way, if not better, than

11

what [Claybrooks] could, considering [Williams] was already up for arbitration." Dkt. 1-2 at 4. The question, then, is whether Williams satisfied the jurisdictional exhaustion requirement by filing an administrative complaint and, if so, whether she can then assert an equitable defense (her reliance on Claybrooks) to overcome any non-jurisdictional hurdles. Because the Court concludes that Williams failed to satisfy the jurisdictional exhaustion requirement, it does not reach the question whether, as a matter of equity, her failure to follow through should be overlooked.

The relevant question is, once again, whether this issue is controlled by *Spinelli*; if it is, the defect is jurisdictional. The only difference between the facts present here and those in *Spinelli* is that the plaintiff in *Spinelli* "never filed an administrative complaint," *Doak*, 798 F.3d at 1104, while Williams filed, and then withdrew, her complaint. That difference is immaterial. The relevant question under the Rehabilitation Act is whether the Williams was "aggrieved by [a] final disposition of" her administrative complaint. 29 U.S.C. § 794a(a)(1). In *Spinelli*, the plaintiff was not aggrieved by a final disposition because he "never filed an administrative complaint." 446 F.3d at 162. Here, Williams was not aggrieved by a final disposition because she withdrew her complaint before the Postal Service could act on it. There is no sensible reading of the statute that would permit the Court to distinguish between these circumstances. In both *Spinelli* and this case, the employee did not obtain a final disposition (and the agency did not simply fail "to take final action on [an administrative EEO] complaint"), and, in both cases, that omission was a product of the employee's own failure to pursue administrative relief.

Even if this Court were to conclude that *Spinelli* is at odds with prevailing doctrine for distinguishing between jurisdictional and non-jurisdictional rules,[3] *Spinelli* still requires this result. To be sure, one might argue that *Spinelli* held only that the Rehabilitation Act conditions jurisdiction on the *filing* of an administrative complaint. But that is not what *Spinelli* actually says. The D.C. Circuit clearly set forth its holding: "jurisdiction depended on the 'final disposition of [an administrative] complaint," and, because Spinelli never filed an administrative complaint, "there was . . . no final disposition of one." 446 F.3d at 162. In other words, the district lacked jurisdiction over Spinelli's claim because "there was no final disposition" of an administrative charge. Any question that this was the holding in *Spinelli*, moreover, was put firmly to rest in *Doak*. There, the Court of Appeals wrote that *Spinelli* "*held* that federal court 'jurisdiction depended on the "final disposition of [an administrative] complaint."'" 798 F.3d at 1103–04 (emphasis added) (quoting *Spinelli*, 446 F.3d at 162). This Court is bound by that holding. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989).

---

[3] At least one other decision from this Court has observed that *Spinelli* stands in some tension with the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), which was decided only months before *Spinelli*. *See Dick v. Holder*, 80 F. Supp. 3d at 110 n.8. As the *Dick* decision explains, *id.*, that tension arises from *Arbaugh's* admonition that, unless Congress "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional," courts should "treat [a] restriction as nonjurisdictional in character." 546 U.S. at 515–16. And, although "the D.C. Circuit has not squarely addressed the issue of whether equitable defenses are available" under Title VII "to plaintiffs who bypass the administrative filing requirement altogether," *Dahlman v. Am. Ass'n of Retired Persons*, 791 F. Supp. 68, 75 (D.D.C. 2011), it has, at times, declared without apparent qualification that "Title VII's exhaustion requirements are not jurisdictional," *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011); *see also Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010) ("[N]either Title VII nor the ADEA incorporates a jurisdictional exhaustion requirement."). Those cases are relevant here because the statutory exhaustion requirement in the Rehabilitation Act, 29 U.S.C. § 794a(a)(1) ("employee . . . aggrieved by the final disposition of such complaint") is remarkably similar to the statutory exhaustion requirement found in Title VII, 42 U.S.C. § 2000e-16(c) ("an employee . . . , if aggrieved by the final disposition of his complaint").

Applying that rule here, Williams withdrew her administrative complaint before the Postal Service had an opportunity to issue a final disposition, and thus this Court lacks jurisdiction to consider the claim raised in that aborted administrative complaint.

2.  *December 15, 2015 Refusal to Permit Williams to Return to Work*

Williams's final claim alleges that the Postal Service refused to allow her to return to work on and after December 15, 2015, even though her doctor had lifted "all restrictions" on her ability to work. Dkt. 7 at 2 (Am. Compl. ¶ 2). Because this claim did not arise until after Williams filed her December 3, 2015 EEO complaint, the Court can safely assume that it was not included in that complaint. Moreover, even if it was added by way of amendment—and there is no evidence that it was—it would face the same jurisdictional hurdle discussed above. Nor does the fact that Williams included the claim in her August 9, 2017 EEO complaint provide the Court with jurisdiction, at least with respect to her pending complaint. As explained above, the Court must have jurisdiction at the time the plaintiff brings suit, and a subsequently filed administrative complaint is insufficient to confer jurisdiction over a claim that was absent at the time suit was brought. In those circumstances, the plaintiff's remedy, if any, lies in exhausting her administrative rights and then commencing a new suit. Such a suit may face other exhaustion hurdles, but (presumably) not jurisdictional ones.

The Court, accordingly, concludes that Williams failed to satisfy the jurisdictional exhaustion requirements before bringing suit on her December 15, 2015 claim and that, as a result, that claim must also be dismissed for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion to dismiss, Dkt. 41, and will **DISMISS** this action.

A separate Order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:   August 15, 2018